IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ZACHARY PATTERSON                                    PLAINTIFF

VS.                          CIVIL ACTION NO. 5:18-cv-74(DCB)(MTP)

CITY OF McCOMB, MISSISSIPPI; SCOTT
McKENZIE, in His Individual Capacity and
His Official Capacity as the Chief of
Police for the City of McComb, Mississippi;
RODNEY NORDSTROM, in His Individual Capacity
and His Official Capacity as a Deputy Chief
of Police for the City of McComb, Mississippi;
KURT TAYLOR, in His Individual Capacity and
His Official Capacity as a Police Officer for
the City of McComb, Mississippi; PIKE COUNTY,
MISSISSIPPI; WARREN GILMORE, in His Individual
Capacity and in His Official Capacity as a
Deputy Sheriff for Pike County, Mississippi;
SONYA WELLS, in Her Individual Capacity and
Her Official Capacity as the Municipal Court
Clerk for the City of McComb, Mississippi;
BARRETT PICKETT, and JOHN DOES 1-10          DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the Court on defendants Pike County,

Mississippi, and Pike County Sheriff's Deputy Warren Gilmore

("Gilmore")'s Motion for Judgment on the Pleadings **(docket entry

25)**.[1]

This Court's Order of September 18, 2018 (docket entry 52)

stayed all discovery in this case until such time as the Court has

ruled on the defendants' Motion for Judgment on the Pleadings.

Upon careful consideration of the defendants' Motion for Judgment

_____

[1] Although there are additional defendants in this lawsuit, the
present Motion for Judgment on the Pleadings is brought only by Pike
County and Gilmore.

on the Pleadings and the Memorandum Briefs of the parties, the Court finds the following:

This case arises out of the January 26, 2017, arrest of Zachary Patterson by the City of McComb Police Department. Plaintiff Patterson contends that his arrest and incarceration violated both federal and state laws.

On May 25, 2018, Patterson filed suit in this Court alleging federal and state law claims against Deputy Gilmore in both his official and individual capacities. (Docket entry 1). The plaintiff subsequently filed an Amended Complaint with identical allegations. (Hereinafter "Complaint" or "Docket entry 13"). In particular, Patterson asserts the following federal claims against Gilmore: (1) violation of due process; (2) false arrest; (3) malicious prosecution; (4) conspiracy to maliciously prosecute; and (5) negligence/gross negligence. The plaintiff also asserts state law claims for (1) violation of due process; (2) false arrest; (3) malicious prosecution; (4) conspiracy to maliciously prosecute; and (5) negligence/gross negligence.[2]

The moving defendants contend that the plaintiff's claims against Deputy Gilmore in his individual capacity under federal law are barred by qualified immunity; that the plaintiff's federal

---

[2] The plaintiff does not clearly state whether his claims for malicious prosecution, conspiracy, and negligence/gross negligence are alleged under federal law, state law, or both. The Court therefore treats said claims as being alleged under both federal and state law.

claims against Deputy Gilmore in his official capacity are barred by <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658 (1978); that the plaintiff's claims under state law against Deputy Gilmore in his official capacity as a Pike County Deputy are barred by the Mississippi Tort Claims Act ("MTCA"); and that the plaintiff's state law claims against Deputy Gilmore in his individual capacity are also barred by the MTCA.

According to the plaintiff's Complaint, on January 26, 2017, Barrett Pickett filed a sworn criminal affidavit charging Patterson with disturbing the peace, accusing him of unlawfully surveying Pickett's property and continuing "to attempt to engage in a verbal altercation with Mr. Pickett until words were exchanged between the two of them." Docket entry 13 at ¶ 15. The plaintiff further contends that on or about January 26, 2017, Pickett filed a second sworn criminal affidavit charging the plaintiff with trespass and accusing him of "unlawfully and knowingly without the authority of law [going] on the private property of Barrett Pickett at ... McComb MS 39648." <u>Id</u>. at ¶ 16.

The plaintiff further alleges that on February 23, 2017, he received a call from City of McComb Police Officer Rodney Nordstrom telling him that a warrant had been issued for his arrest. <u>Id</u>. at ¶17. Nordstrom purportedly told Patterson to come to the police station to pick up his paperwork. <u>Id</u>. at ¶ 18. The plaintiff consulted with attorney Ronnie Whittington, who allegedly told him

that Deputy Warren Gilmore was being "pissy about the Plaintiff not being arrested." Id. at ¶ 23. According to the plaintiff, Whittington told the plaintiff to fill out his paperwork at the police station. Id. at ¶ 24. The plaintiff asserts that he went to the Police Department where Officer Kurt Taylor had him enter the booking area and took his personal effects. Id. at ¶ 27-31. Thereafter, Taylor opened a jail cell door and placed Patterson in the cell. Id. at ¶ 32.

The plaintiff asserts that the City of McComb Municipal Court had in effect, at the time of his arrest, a standing order that all persons arrested, with or without a warrant, for any misdemeanor prosecuted before the municipal court "will be released on their personal recognizance as soon as practicable after arrest ...." Id. at ¶ 19. Patterson further alleges that he was arrested and jailed in contravention of the standing order. Id. at ¶ 38.

The plaintiff also contends "upon information and belief" that Warren Gilmore is friends with defendant Barrett Pickett and that Gilmore called City officers Scott McKenzie and Rodney Nordstrom to tell them that "he wanted the Plaintiff arrested and incarcerated" and that the City officers "agreed to arrest and incarcerate Plaintiff in violation of the City of McComb's standing Order on Recognizance Bonds." Id. at ¶ 59.

The plaintiff alleges that he was arraigned, and that subsequent to his arraignment he was found not guilty on the

disturbing the peace and trespassing charges filed by Pickett.  <u>Id</u>.
at ¶¶ 63-64.

**CLAIMS**

On May 25, 2018, Patterson filed suit in this Court alleging
both federal and state law claims against Pike County Deputy Warren
Gilmore in both his official and individual capacities.  (Docket
entry 1).  Subsequently, he filed an Amended Complaint containing
identical allegations.  ("Complaint" or "Docket entry 13").   He
asserts the following federal claims against the moving defendants:
(1) violation of due process; (2) false arrest; (3) conspiracy to
maliciously prosecute; and (4) negligence/gross negligence.   As
stated above, the Court treats these claims as being alleged under
both federal and state law.

The plaintiff also seeks declaratory relief on the same basis
as the claims above.   The moving defendants contend that the
plaintiff has failed to state a claim and is not entitled to any
declaratory relief.

**STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure governs the
defendants' Motion inasmuch as a responsive pleading has already
been filed.  <u>See</u>, <u>e.g.</u>, <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th
Cir.1999); <u>Robertson v. Mullins</u>, 2:12-cv-57, 2013 WL 1319759, at *1
(N.D. Miss. Mar. 26, 2013).  The standard for addressing a motion
for judgment on the pleadings under Rule 12(c) is the same as that

5

for addressing a motion to dismiss under Rule 12(b)(6). In re Great Lakes Dredge & Dock Co., 624 F.3d 201, 209–10 (5th Cir. 2010).

Therefore, to survive the moving defendants' motion the plaintiff's Complaint must provide the grounds for entitlement to relief – including factual allegations that, when assumed to be true, "raise a right to relief above the speculative level." Cuvillier v. Sullivan, 503 F.3d 397, 401 (5th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553-56 (2007)).

The complaint must allege sufficient factual matter "to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Id. at 558 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 at 234)(quoting Daves v. Hawaiian Dredging Co., 114 F. Supp. 643, 645 (D. Haw. 1953)).

A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009).

**PLAINTIFF'S CLAIMS UNDER FEDERAL AND STATE LAW**

## I. Federal Claims - Individual Capacity

The plaintiff asserts his claims under Section 1983 against Deputy Gilmore in his individual capacity for: (1) violation of due process; (2) false arrest; (3) conspiracy to maliciously prosecute; and (4) negligence/gross negligence.

Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." Morris v. Dillard Dept. Stores, Inc., 277 F.3d 743, 753 (5th Cir. 2001). A law enforcement officer is entitled to the cloak of qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional right." Mangieri v. Clifton, 29 F.3d 1012 (5th Cir. 1994). Significantly, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In assessing a claim of qualified immunity, courts apply a two-part analysis. The threshold question is "whether Plaintiff's allegations establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002). If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."

<u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>see</u> <u>also</u> <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009)(holding that "order of battle" outlined in <u>Saucier</u> is not mandatory in every instance). However, "if a violation could be made out, the next sequential step is to ask whether the right was clearly established." <u>Saucier</u>, 533 U.S. at 201. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." <u>Id</u>. at 202.

The purpose of qualified immunity is to protect public officials from the "burden of fighting lawsuits which arise from the good faith performance of their duties." <u>Ren v. Towe</u>, 130 F.3d 1154, 1159 (5th Cir. 1997). Thus, qualified immunity "is not just immunity from judgment, but rather, is immunity from all aspects of suit." <u>Jacques v. Procunier</u>, 801 F.2d 789, 791 (5th Cir. 1986). The qualified immunity issues in a case are "threshold" issues and must be dealt with as expeditiously as possible and prior to resolving non-immunity issues. <u>See</u> <u>Harlow v. Fitzgerald</u>, 102 S.Ct. 2727, 2728 (1982); <u>see</u> <u>also</u> L.U.Civ.R. 16.1(B)(4).

The Fifth Circuit, in order to fulfill the protective purpose of qualified immunity, has long required more than mere "notice pleading" when a claimant asserts a Section 1983 claim against an official in his individual capacity. <u>Elliott v. Perez</u>, 751 F.2d 1472 (5th Cir. 1985). More specifically, when an officer raises the

qualified immunity defense, a complaint "must present more than bald allegations and conclusory statements." Wicks v. Mississippi State Employment Svcs., 41 F.3d 991, 995 (5th Cir. 1995). In fact, a plaintiff must "allege with sufficient particularity all facts establishing a right to recovery, including facts which negate the official's immunity defense." Id.; see also Nunez v. Simms, 341 F.3d 385 (5th Cir. 2003)(holding that heightened pleading in qualified immunity cases requires plaintiff to rest complaint on more than conclusions alone); Foster v. City of Lake Jackson, 28 F.3d 425 (5th Cir. 1994)(burden of negating qualified immunity defense lies with plaintiff).

Plaintiffs "cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions." Floyd v. City of Kenner, 351 Fed. Appx. 890, 893 (5th Cir. 2009)(citing Schultea v. Wood, 47 F.3d 1427, 1433–34 (5th Cir. 1995). Furthermore, "[h]eightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." Reyes v. Sazan, 168 F.3d 158, 161 (5th Cir. 1999). Patterson's Complaint does not meet the heightened pleading standard.


A. Due Process and False Arrest

The plaintiff alleges that the "defendants" violated his right to due process by "processing, fingerprinting, photographing,

searching, and incarcerating" him in violation of the City's Standing Order on Recognizance Bonds. <u>Id</u>. at ¶ 79. To the extent the plaintiff is asserting that Gilmore is liable for a due process violation for "processing, fingerprinting, photographing, [and] searching" him, his claim fails. "Personal involvement is an essential element of a civil rights cause of action." <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983); <u>see</u> <u>also</u> <u>Borden v. Jackson County</u>, 2012 U.S. Dist. LEXIS 134400 (S.D. Miss. Aug. 24, 2012)(holding that a plaintiff must demonstrate personal participation in alleged unconstitutional conduct). There are no allegations that Gilmore personally participated in processing, fingerprinting, photographing or searching the plaintiff and, therefore, Gilmore can have no liability.

To the extent that the plaintiff is attempting to assert a false arrest claim via the Fourteenth Amendment's due process clause, the same is not cognizable. Although the Fourteenth Amendment is relevant because it applies the Fourth Amendment to the states, claims of unlawful arrest and detention should be analyzed under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause. <u>See</u> <u>Francisco v. Edmonson</u>, 2018 WL 913186, at *3 (W.D. La. Feb. 15, 2018). Thus, the plaintiff's wrongful incarceration claim must be analyzed under the Fourth Amendment.

To prevail on a false arrest claim under the Fourth Amendment,

Patterson must prove that the officer who made the arrest did so without a properly issued warrant or probable cause.  Dennis v. Warren, 779 F.2d 245 (5th Cir. 1985).  There is no constitutional violation if an arrest is based on a lawfully issued warrant or probable cause, regardless of the outcome of the criminal prosecution.  Smith v. Gonzalez, 670 F.2d 522 (5th Cir. 1982).

In this case, the plaintiff's claim is based on the fact that he was arrested and jailed by City of McComb officers for a misdemeanor violation in contravention of the City's Standing Order on Recognizance.  First, it is clear from the plaintiff's Complaint that he was arrested on a lawfully issued warrant from the City of McComb Municipal Court.  (Docket entry 13, ¶¶ 15-16).  This fact negates any false arrest claim.  Moreover, the plaintiff's Complaint makes it clear that Barrett Pickett, not Deputy Gilmore, is the person who swore out charges against the plaintiff and had the warrant issued.  Id. at ¶¶ 15-34.  Furthermore, the plaintiff's Complaint makes it clear that City of McComb officers, not Deputy Gilmore, executed on the criminal arrest warrant issued by the City of McComb Municipal Court and placed Patterson in jail.  Id. at ¶¶ 17-18, 26-35.

"Personal involvement is an essential element of a civil rights cause of action."  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  Because the allegations of the plaintiff's Complaint specify, with no uncertainty, that Pickett made out the affidavit,

which the City Court used to issue an arrest warrant, and City of McComb officers executed on that warrant, Deputy Gilmore had no personal participation in the plaintiff's arrest and the claim against him must be dismissed.

In fact, the only allegation as to Deputy Gilmore is that an attorney purportedly told the plaintiff that he heard that Gilmore was "pissy about the plaintiff not being arrested" and that "[o]n information and belief, Warren Gilmore ... [is] friends with the defendant, Barrett Pickett" and that Gilmore "called ... Scott McKenzie and Rodney Nordstrom ... and told them that he wanted the plaintiff arrested and incarcerated ...." Id. at ¶ 59. These allegations are insufficient to demonstrate "personal participation" on the part of Deputy Gilmore in having Patterson arrested and incarcerated. The plaintiff's Complaint also fails to meet the heightened pleading standard as to the second prong of the qualified immunity analysis, because there is insufficient information for the Court to determine whether or not any action by Deputy Gilmore was objectively reasonable under the circumstances. It is not clear whether a phone call was made by Gilmore, if such call was made in connection with the plaintiff's being jailed, the subject of the phone call, or any other connection between City officers and Gilmore. The Complaint should therefore be dismissed based on the lack of personal participation by Gilmore.

The plaintiff's allegation that he suffered a constitutional

deprivation because he was arrested in violation of a City Court Standing Order is insufficient to demonstrate liability. To succeed in a claim brought under 42 U.S.C. § 1983, a plaintiff must show "that the defendant deprived him of a right secured by the Constitution or federal law and that the deprivation occurred under color of state law." Brown v. Miller, 631 F.2d 408, 410 (5th Cir. 1980)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155 (1978)).

Patterson complains that he should not have been arrested and incarcerated, but should have been arrested and released on his own recognizance pursuant to a municipal court's standing order.[3] However, this is simply insufficient to demonstrate a violation of the U.S. Constitution or federal law inasmuch as a standing order from a municipal court is neither.

Therefore, even taking as true the plaintiff's allegation that Deputy Gilmore spoke with City officers and told them he wanted the plaintiff arrested in violation of the Municipal Court standing order, there is no constitutional violation, and this claim must be dismissed.

_____

[3] A plain reading of the Standing Order reveals that the incident in question is not in conflict with the Standing Order. According to the plaintiff, the Standing Order states that "all persons arrested, with or without a warrant, for any misdemeanor prosecuted before the municipal court will be released on their personal recognizance as soon as practicable after arrest ...." Complaint at ¶ 19 (emphasis added). The Standing Order says nothing about an arrestee being jailed or not but, rather, simply states that after arrest, a detainee will be released on his personal recognizance as soon as practicable. That is what occurred in this case. Thus, there was no violation of the Standing Order.

B. Conspiracy to Maliciously Prosecute

Patterson contends that Deputy Gilmore, Barrett Pickett, Scott McKenzie, Rodney Nordstrom, Kurt Nordstrom, an unknown female officer, an unknown female employee, and Sonya Wells conspired

> to initiate criminal proceedings against the plaintiff, without probable cause or due process, maliciously prosecute the plaintiff causing him injury and damage, and having those charges resolved favorably to the plaintiff constitutes an unlawful conspiracy to maliciously prosecute the plaintiffs for which the defendants are liable to the plaintiff.

(Docket entry 13, ¶ 84).

To prevail on a Section 1983 conspiracy claim, "a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990), abrogated on other grounds as recognized by Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992). Here, the plaintiff alleges that the defendants conspired to deprive him of his "civil right" not to be maliciously prosecuted. Inasmuch as there is no federal civil right not to be maliciously prosecuted,[4] any such conspiracy claim under Section 1983 fails. Cuadra v. Houston ISD, 626 F.3d 808, 812–13 (5th Cir. 2010)(Fifth Circuit has held that there is no freestanding § 1983 malicious prosecution claim); Goodarzi v. Hartzog, 2013 WL 3110056,

---

[4] The plaintiff's malicious prosecution claim is addressed only to Mr. Pickett, not to the moving defendants Pike County and Deputy Gilmore.

14

at *15 (S.D. Tex. June 14, 2013)(conspiracy is a derivative tort because recovery is not based on the conspiracy, _i.e._, the agreement, but on the injury from the underlying tort. Moreover, the malicious prosecution claim is time-barred, so the conspiracy claim cannot be based upon it).

Similarly, if the plaintiff were arguing that he was bringing a claim for conspiracy under 42 U.S.C. § 1985(3)(conspiracy to deprive persons of rights or privileges), his claim would fail since the plaintiff fails to meet the heightened pleading standard. Patterson merely states that "[o]n information and belief ..." Deputy Gilmore and the defendants "conspired" to arrest him. Complaint, ¶ 60. This is the very type of bald conclusory allegation that the heightened pleading standard is designed to prohibit.

In addition, in order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. In so doing, the plaintiff must show that the [alleged] conspiracy was motivated by a class-based animus.

Hilliard v. Ferguson, 30 F.3d 649, 652–53 (5th Cir. 1994). In other words, "the plaintiff must show the conspiracy was motivated by a class-based animus." Id. at 653. Patterson makes no such

allegations here, and this claim must likewise be dismissed.

## C. Negligence / Gross Negligence

Finally, the plaintiff alleges that the defendants negligently arrested, searched, and incarcerated him. (Docket entry 13, ¶ 85). Since the plaintiff's claims for negligence and gross negligence fail to meet the heightened pleading standard as to Deputy Gilmore, a qualified immunity analysis is unnecessary here. It is well settled that negligence, even gross negligence, does not implicate the Constitution and does not provide a basis for a Section 1983 claim. See Farmer v. Brennan, 511 U.S. 825, 835 (1994)("deliberate indifference entails something more than mere negligence, ...."); Ruffin v. Landry, 2011 WL 1752084, *2 (W.D. La. 2011)(noting "courts have, in a number of contexts, determined that allegations amounting to negligence cannot support a § 1983 claim.") citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)(negligent medical care); Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996)(negligence insufficient to support failure to protect claim under § 1983); Eason v. Thaler, 73 F.3d 1322, 1328-29 (5th Cir. 1996)(gross negligence by prison officials in preventing a gas leak insufficient to support § 1983 action under the Eighth Amendment); and Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir.1994) ("Even when constitutional liberty interests are implicated, not

all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution."); Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). Accordingly, the plaintiff's negligence and gross negligence claims under federal law must fail.

II. Federal Claims – Official Capacity

The plaintiff also alleges federal claims against Deputy Gilmore in his "official capacity." (Docket entry 13, ¶ 9). Suits brought against officers in their official capacities "generally represent only another way of pleading action against the entity of which an officer is an agent." Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690 n.55 (1978). Such allegations are to be treated as a suit against the entity itself, in this case Pike County. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

A local governmental entity can be held liable under Section 1983 for violating a citizen's constitutional rights but only if "the governmental body itself 'subjects' [that] person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). Governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." Id. There is no respondeat superior

liability under Section 1983; rather, the key to municipal liability is demonstrating that the deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. <u>Monell</u>, 436 U.S. at 694. The unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001).

To establish liability against Pike County/Gilmore (officially), the plaintiff must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. <u>See</u> <u>Rivera v. Houston Indep. Sch. Dist.</u>, 349 F.3d 244, 247-249 (5th Cir. 2003). "Proof of an official policy or custom can be shown in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority." <u>Thomas v. Prevou</u>, 2008 WL 111293, *3 (S.D. Miss. 2008)(citing <u>Monell v. City of New York Dept. of Social Servs.</u>, 436 U.S. 658, 694 (1978); <u>Snow v. City of El Paso, Texas</u>, 501 F. Supp. 2d 826, 831 (W.D. Tex. 2006)).

The plaintiff's official capacity claims fail because he has

failed to allege an underlying constitutional violation for which Deputy Gilmore is responsible. <u>Becerra v. Asher</u>, 105 F.3d 1042, 1048 (5th Cir. 1997)(holding that a constitutional violation is an essential element in a § 1983 claim against a municipality). Furthermore, the plaintiff has failed to provide any evidence of a policy, practice or custom of Pike County that was the "moving force" behind any constitutional violation.


## III. State Claims - Individual Capacity

The plaintiff asserts state law claims for: (1) due process; (2) false arrest; (3) conspiracy to maliciously prosecute; and (4) negligence/gross negligence against Deputy Gilmore in his individual capacity.

### A. Mississippi Tort Claims Act

The plaintiff's state law claims for violation of due process, false arrest and negligence/gross negligence are exclusively governed by the MTCA, Miss. Code Ann. § 11-46-1 <u>et</u> <u>seq</u>. Section 11-46-7 of the MTCA provides that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7(2). There are no allegations that Deputy Gilmore was acting outside the course and scope of his employment in this matter, and as a result, he is entitled to immunity from the above-referenced claims asserted against him in his individual capacity as they fall under

the MTCA.

## B. Conspiracy to Maliciously Prosecute

The plaintiff's claim for conspiracy to maliciously prosecute falls outside the parameters of the MTCA. <u>Miller v. Wills</u>, 2010 WL 3036491 * 6 (S.D. Miss. 2010)(holding that MTCA immunity did not apply to conspiracy claim). Inasmuch as the MTCA does not apply to the conspiracy claim against Gilmore individually, he has no immunity from the claim. However, the plaintiff's claim for conspiracy as to Gilmore individually fails as a matter of law.

To demonstrate a conspiracy claim under Mississippi law, the plaintiff must establish "a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." <u>Gallagher Bassett Servs. Inc. v. Jeffcoat</u>, 887 So.2d 777, 786 (Miss. 2004)(citing <u>Levens v. Campbell</u>, 733 So.2d 753, 761 (Miss. 1999)). The Mississippi Supreme Court has explained that "[w]here a civil conspiracy gives rise to damages, a right of recovery may arise." <u>Id</u>. In <u>Bradley v. Kelley Brothers Contractors</u>, 117 So.3d 331, 339 (Miss.Ct.App. 2013), the Mississippi Court of Appeals held that to "establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, [and (4)] damages to the plaintiff as a proximate

result." <u>Harris v. Town of Woodville</u>, 196 So. 3d 1121, 1131 (Miss. Ct. App. 2016).

Here, the plaintiff has failed to allege with sufficient specificity any agreement to accomplish an unlawful purpose. The criminal charges made by Barrett resulted in a warrant being issued. (Docket entry 23, ¶¶ 15-34). The City of McComb arrested the plaintiff based on the warrant. <u>Id</u>. The fact that there is a standing order from the City of McComb's municipal court stating that misdemeanor arrestees should be released on their own recognizance does not negate that the arrest warrant was for a jailable offense and is not illegal. <u>See</u> <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001).

A plain reading of the Municipal Court's Standing Order reveals that what occurred here is not in conflict with that Order. In particular, per the plaintiff's Complaint, the Order states that "all persons arrested, with or without a warrant, for any misdemeanor prosecuted before the municipal court "<u>will be released on their personal recognizance as soon as practicable after arrest</u> ...." (Docket entry 13, ¶ 19)(emphasis added). The Order itself says nothing about an arrestee being jailed, rather it simply states that after arrest, a detainee will be released on his personal recognizance as soon as practicable. The Order says nothing about jailing an arrestee during the detention. Thus, this claim fails against Deputy Gilmore, individually.

## IV. State Law - Official Capacity

As previously noted, the plaintiff's state law claims for violation of due process, false arrest and negligence/gross negligence are exclusively governed by the MTCA. While the MTCA waives sovereign immunity as a whole, it retains a number of restrictions, limitations and immunities, several of which apply here to bar the plaintiff's claims.


### A. Due Process / False Arrest

The plaintiff alleges that the "defendants" violated his right to due process by "processing, fingerprinting, photographing, searching, and incarcerating" him in violation of the City's Standing Order on Recognizance Bonds. Docket entry 13, ¶ 79. As previously noted, it is clear from the plaintiff's Complaint that Gilmore had no role in processing, fingerprinting, photographing, or searching him. Thus, this claim fails.

The plaintiff's claim that he was wrongfully incarcerated is barred by the inmate exception of the MTCA. See Miss. Code Ann. § 11-46-9(1)(m), which states that:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duty shall not be liable for any claims:
>
> . . .
>
> (m) of any claimant who at the time the claim arises is an inmate of any detention center, jail, work house,

penal farm, penitentiary or other such institution regardless of whether such claimant is or is not an inmate of any detention center, jail, work house, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m).

The Mississippi Supreme Court has applied Section 11-46-9(1)(m) on a number of occasions, and in each instance has upheld its constitutionally. See, e.g., Wallace v. Town of Raleigh, 815 So.2d 1203 (Miss. 2002). Notably, the fact that an inmate is a pre-trial detainee, i.e. not yet convicted, makes no difference in the application of the inmate exception. For example, in Liggans v. Coahoma Co. Sheriff's Dept., 823 So.2d 1152 (Miss. 2002), the Mississippi Supreme Court granted Coahoma County's Motion to Dismiss based on the inmate exception and found that the exception applied despite the fact that the plaintiff had not yet been convicted. In another case, Love v. Sunflower County Sheriff's Department, 860 So.2d 797 (Miss. 2003), the State Supreme Court reiterated that there is no distinction between persons "convicted" and those not "convicted" in the application of Section 11-46-9(1)(m). Id. at 801; see also Harvison v. Greene Co. Sheriff's Dept., 899 So.2d 922 (Miss. Ct. App. 2005)(upholding trial judge's grant of Rule 12(b)(6) motion based on Miss. Code Ann. § 11-46-9(1)(m)).

In the case before this Court, Patterson's claim for wrongful incarceration arises out his incarceration in the City Jail and,

therefore, his claim is barred.

As for the plaintiff's false arrest claim, it is barred by Gilmore's lack of participation in any arrest, and by the police function exemption. <u>See</u> Miss. Code Ann. § 11-46-9(1)(c). Patterson's Complaint makes it clear that Mr. Pickett signed a criminal affidavit which caused an arrest warrant to issue from the City Court, not from Deputy Gilmore. Gilmore, therefore, cannot be held liable for any arrest, good, bad or otherwise. Furthermore, the Police Function exemption provides Gilmore protection. The MTCA provides as follows:

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
. . .

(c) rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection <u>unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury</u>.

Miss. Code Ann. § 11-46-9(1)(c)(emphasis added). Importantly, "the plaintiff has the burden of proving reckless disregard by a preponderance of the evidence." <u>Hinds County v. Burton</u>, 187 So.3d 1016, 1020 (Miss. 2016).

Reckless disregard "requires more than a showing of mere negligence." <u>Bonner v. McCormick</u>, 827 So. 2d 39, 41 (Miss. Ct. App. 2002). Furthermore, reckless disregard is "a higher standard than gross negligence[.]" <u>City of Jackson v. Shavers</u>, 97 So.3d

24

686, 688 (Miss. 2012).  The Mississippi Supreme Court has explained that "[r]eckless disregard usually is accompanied by a <u>conscious indifference to consequences amounting almost to a willingness that harm should follow</u>."  <u>Maye v. Pearl River County</u>, 758 So. 2d 391, 394 (Miss. 1999)(emphasis added).  The State Supreme Court has further explained that "reckless disregard embraces willful or wanton conduct which requires <u>knowingly and intentionally</u> doing a thing or wrongful act."  <u>Turner v. Ruleville</u>, 735 So. 2d 226, 230 (Miss. 1999)(emphasis added); <u>see</u> <u>also</u> <u>Foster v. Noel</u>, 715 So. 2d 174 (Miss. 1998)(holding that willfulness and wantonness include an element of "intent to harm").

Taking the plaintiff's allegations as true, Gilmore purportedly made a phone call to the City of McComb's Chief of Police stating that he wanted the plaintiff arrested and incarcerated.  Docket entry 13, ¶¶ 23, 59.  Such a call, if it occurred, does not amount to reckless disregard.  Deputy Gilmore is a Pike County Deputy with no authority over the Chief of Police or the City of McComb Police Department.  The Chief was free to disregard the call and had no duty to comply with the purported request.  Significantly, this was a valid issued arrest warrant for the plaintiff that was served by City police officers.  At worst, if the call occurred, it amounts to negligence, not reckless disregard.

B. Negligence/Gross Negligence

Finally, the plaintiff asserts claims against Gilmore in his
official capacity for negligence/gross negligence.  These claims
fail for the same reasons as stated hereinabove.  Furthermore, the
Police Function Exemption bars these claims as it is well-settled
that negligence and gross negligence are insufficient to
demonstrate "reckless disregard."  Reckless disregard "requires
more than a showing of mere negligence." Bonner v. McCormick, 827
So. 2d 39, 41 (Miss.Ct.App. 2002).  Furthermore, reckless disregard
is "a higher standard than gross negligence[.]" City of Jackson v.
Shavers, 97 So.3d 686, 688 (Miss. 2012).

Having carefully considered the defendants' Motion for
Judgment on the Pleadings, as well as the parties' memoranda and
the applicable law, the Court finds that the Motion for Judgment on
the Pleadings (docket entry 25) shall be granted as to Pike County
Sheriff's Deputy Warren Gilmore.

Specifically, the Court finds that the plaintiff's claims
against Deputy Gilmore in his individual capacity under federal law
are barred by qualified immunity; that the plaintiff's federal
claims against Deputy Gilmore in his official capacity are barred
by Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978); that the
plaintiff's claims under state law against Deputy Gilmore in his
official capacity as a Pike County Deputy are barred by the
Mississippi Tort Claims Act ("MTCA"); and that the plaintiff's

state law claims against Deputy Gilmore in his individual capacity are also barred by the MTCA. Furthermore, the plaintiff is not entitled to any declaratory relief.

ACCORDINGLY,

IT IS HEREBY ORDERED that the defendants Pike County, Mississippi, and Pike County Sheriff's Deputy Warren Gilmore ("Gilmore")'s Motion for Judgment on the Pleadings **(docket entry 25)** is GRANTED.

SO ORDERED, this the 12th day of October, 2018.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE